UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERICH MATTHEW BRAUN,

    Plaintiff,

v.                                            Case No:   8:16-cv-794-T-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.[1]
_____

## **OPINION AND ORDER**

Plaintiff, Erich Matthew Braun, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[1] Nancy A. Berryhill became the Acting Commissioner of the Social Security on January 23, 2017. Pursuant to Fed. R. Civ. P. 25(d)(1), Nancy A. Berryhill is substituted as the defendant in this case.

death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If

the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed applications for a period of disability, DIB, and SSI on March 1, 2013, alleging a disability onset date of August 1, 2009. (Tr. 245-47, 248-52, 281). Plaintiff's applications were denied initially on June 3, 2013, and upon reconsideration on June 18, 2013. (Tr. 151-55, 156-61, 165-69, 172-76). Plaintiff requested a hearing and, on July 1, 2014, an administrative hearing was held before Administrative Law Judge Gregory M. Hamel ("the ALJ"). (Tr. 35-71). At the hearing, Plaintiff amended his alleged onset date to January 25, 2013. (Tr. 38). On September 10, 2014, the ALJ entered a decision finding that Plaintiff was not under a disability from January 25, 2013, through the date of the decision. (Tr. 19-34). Plaintiff filed a request for review which the Appeals Council denied on February 10, 2016. (Tr. 1-6). Plaintiff initiated this action by filing a Complaint (Doc. 1) on April 1, 2016.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 25, 2013, the alleged onset date. (Tr. 21). At step two,

the ALJ found that Plaintiff had the following severe impairments: cervical and lumbar disc disease, ulnar neuropathy with hand tremors, bipolar disorder, and a history of alcohol abuse in remission. (Tr. 21). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb stairs, stoop, kneel, balance, crouch or crawl; cannot climb ladders or similar devices; can use the hands and arms for frequent but not constant handling and fingering; can do routine and repetitive tasks only; cannot do tasks requiring more than occasional public contact; and cannot do tasks requiring more than occasional interactions with co-workers.

(Tr. 24) (footnote describing requirements of light work removed). At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a forklift driver and cafeteria manager. (Tr. 28).

At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 29). Specifically, the ALJ found that Plaintiff can perform such occupations as mailroom clerk and night cleaner. (Tr. 29). Further, the ALJ found that even if Plaintiff was limited to sedentary work he could perform the job of addressing clerk. (Tr. 29). The ALJ concluded that Plaintiff had not been under a disability from January 25, 2013, through the date of the decision, September 10, 2014. (Tr. 30).

## II. Analysis

Plaintiff raises two issues on appeal: (a) whether the ALJ erred by failing to properly evaluate the opinions of treating sources; and (b) whether the ALJ erred in his evaluation of Plaintiff's credibility. The Court will address each issue in turn.

### a) Whether the ALJ erred by failing to properly evaluate the opinions of treating sources.

Plaintiff argues that the ALJ erred in his evaluation of the opinions of Norman J. Toth, D.O., and Jeanne Botz, ARNP. Plaintiff also contends that the ALJ improperly adopted the opinions of the state agency psychological consultants in this case. The Court will address Plaintiff's arguments separately.

#### 1. The ALJ's treatment of Dr. Toth's opinion

The record shows that Plaintiff was seen by Norman J. Toth, D.O. on March 14, 2013, for a second opinion concerning his bipolar disorder. (Tr. 433). Plaintiff reported a chronic problem with his cyclic moods, indicating that he would be manic for 4-5 days and then depressed for 2-3 days. (Tr. 433). He rarely had euthymia. He reported sleeping only about 2 hours per night with racing thoughts, but when in the depressive phase he would be hypersomnic, sleeping up to 18 hours per day. Plaintiff also related severe panic attacks. His medications were seroquel, trazodone, xanax, and lithium. He stated he was unable to hold a job for the last few years due to his progressive mental illness, missing at least one day of work per week, due to mental illness. (Tr. 433, 434). He stated that he was first diagnosed as bipolar at age 17-18. He abused alcohol from that age 17 or 18 to age 33, but was now sober. He stated that he had periods where he would walk endlessly around his neighborhood. He also had fine motor hand tremors. (Tr. 433). Dr. Toth diagnosed Plaintiff with bipolar disorder I, manic phase. He assigned a GAF of 47. (Tr. 434, 437). Dr. Toth opined that Plaintiff "presents as totally and permanently disable [sic] by his bipolar

disorder. He is unable to hold a job or maintain a normal customary workplace or schedule." (Tr. 434).

In his decision, the ALJ addressed Dr. Toth's opinion as follows:

> The undersigned gives very limited weight to the opinion of Normal [sic] Toth, D.O., psychiatrist, insofar as Dr. Toth stated that the claimant is totally and permanently disabled and unable to work (Exhibit B2F, p. 25), as the ultimate question of disability is reserved to the Commissioner of the Social Security Administration. 20 CFR 404.1527 and 416.927. Moreover, this is not well supported by the mental status examination findings, which suggest no more than moderate limitations. (Exhibit 6F, pp. 28, 5, 64, and 74).

(Tr. 27).

Plaintiff argues that the ALJ erred by improperly rejecting Dr. Toth's opinion. (Doc. 18 p. 11-13). Plaintiff contends that while part of Dr. Toth's statement is on the ultimate question of disability, his entire statement encompasses other issues, i.e., that Plaintiff could not maintain a normal customary workplace or schedule. (Doc. 18 p. 12). Plaintiff contends that the evidence supports Dr. Toth's opinion on those issues and the ALJ should have accorded it controlling weight. (Doc. 18 p. 13).

Defendant argues that the ALJ properly weighed Dr. Toth's opinion and gave good cause for doing so. (Doc. 19 p. 5-7). Defendant contends that contrary to Plaintiff's arguments, Dr. Toth's opinions concern an issue reserved for the Commissioner. (Doc. 19 p. 5). In addition, Defendant contends that the ALJ reviewed the record and determined that the evidence in the record does not support Dr. Toth's opinion that Plaintiff could not hold a job or maintain a normal customary work place or schedule. (Tr. 434).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786

F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has held that good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

The Court finds no error in the ALJ's treatment of Dr. Toth's opinion. Opinions on some issues, such as whether the claimant is disabled or unable to work and the claimant's RFC, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d); *See Denomme v. Comm' r, Soc. Sec. Admin.*, 518 F. App'x 875, 878 (11th Cir. 2013); *Hutchinson v. Astrue*, 408 F.

App' x 324, 327 (11th Cir. 2011); Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5. Here, the ALJ correctly determined that Dr. Toth's opinion that Plaintiff is disabled and unable to work was not a medical opinion.

Further, the ALJ explained that Plaintiff's mental status examination findings do not support Dr. Toth's opinion. Substantial evidence supports this finding. For example, during mental status examinations in February 2013 and March 2013, Plaintiff retained good memory and normal concentration, normal or fair judgment, and intact or fair insight. (Tr. 435, 453). Although Plaintiff continued to report mood swings in May 2013, his memory, affect, thoughts, perception, and judgment remained normal. (Tr. 517). At a consultative examination in May 2013, Plaintiff showed appropriate mood and exhibited clear thought processes. (Tr. 485). He retained normal memory, good concentration, and was properly oriented to time, place, persons, and situation, though he exhibited flat affect and was withdrawn. (Tr. 485). In December 2013, he reported that his bipolar symptoms were better under control, though he experienced some anxiety. (Tr. 588). In May 2014, Plaintiff's mood appeared more stable, and he reported an improvement in his ability to sleep with an increase in his mediation. (Tr. 551-52). He appeared pleasant and cooperative with logical, sequential, and goal oriented thoughts (Tr. 552). Plaintiff also exhibited normal memory, concentration, and affect, though he showed signs of depressed mood (Tr. 552). Treatment notes show normal judgment and fair insight (Tr. 552).

The ALJ's decision shows that he discussed and considered Dr. Toth's opinion, and substantial evidence supports his evaluation of Dr. Toth's opinion. Accordingly, the Court will not disturb the ALJ's treatment of Dr. Toth's opinion on review.

## 2. The ALJ's treatment of Nurse Practitioner Botz's opinion

The record shows that Plaintiff was seen by Nurse Practitioner Botz on February 22, 2013. (Tr. 454). Plaintiff told her that over the last couple of months he had been feeling very restless and irritable with feelings of depression and mood swings from "high to low." He stated he felt more depressed during the day, and at night felt more manic, restless, and unable to sleep. Plaintiff reported he had racing thoughts and difficulty slowing his mind down. (Tr. 454). Nurse Practitioner Botz assessed bipolar hypomania and assigned a GAF of 55. (Tr. 454).

On March 1, 2013, Plaintiff was seen again by Nurse Practitioner Botz. (Tr. 447). She noted that Plaintiff's behavior was withdrawn, motor activity showed fidgeting in the chair, his mood was depressed and anxious, and his concentration, judgment and insight were fair. (Tr. 446).

On May 5, 2013, Nurse Practitioner Botz again saw Plaintiff, noting withdrawn behavior, mood swings, and fair insight. She diagnosed bipolar disorder and assigned a GAF of 55. (Tr. 518-519).

On June 6, 2014, Nurse Practitioner Botz filled out a report on Plaintiff. (Tr. 524). She stated that he had a long history of mood swings; currently depressed with constricted affect, that he was withdrawn, and rarely went out of his room. (Tr. 524). His thought process was organized and relevant, but he had racing thoughts. (Tr. 524). His concentration was fair but due to racing thoughts he had difficulty staying on topic. He was oriented times 3, but had low attention and poor concentration, racing thoughts and manic episodes. (Tr. 524). His diagnosis was bipolar disorder, mixed, with general anxiety; and polysubstance abuse in remission. (Tr. 524). Nurse Practitioner Botz found that Plaintiff's prognosis was poor, as he had been on multiple medication with only fair compensatory progress. Nurse Practitioner Botz opined that Plaintiff was "[u[nable to work secondary to mood swings/depression, last worked 2008." (Tr. 524).

On September 4, 2014 Plaintiff saw Nurse Practitioner Botz again. (Tr. 599). At that time, she noted his depressed mood, and fair insight. His diagnosis remained the same with a GAF of 55. (Tr. 598). Nurse Practitioner Botz saw Plaintiff again on March 31, 2014. (Tr. 576). At that time, his mood was depressed, his affect constricted, and his insight fair. (Tr. 575).

In his decision, the ALJ addressed Nurse Practitioner Botz's opinion as follow:

> Limited weight is also given to the opinion of registered nurse practitioner, Jeanne Botz, that the claimant is unable to work secondary to mood swings and depression as this is out of proportion to the mental status examination findings which show no significant problems with memory and concentration. (Exhibit B5F). Moreover, Ms. Botz is not an acceptable medical source.

(Tr. 27).

Plaintiff contends that the ALJ erred by according "little weight" to the opinion of Nurse Practitioner Botz because the ALJ's reasons for doing so were not valid. (Doc. 18 p. 13-15). First, Plaintiff argues that it was erroneous for the ALJ to reject Nurse Practitioner Botz's opinion on the basis that she was not an acceptable medical source. (Doc. 18 p. 13-15). Plaintiff acknowledges that Nurse Practitioner Botz is not an acceptable medical source, but argues that the ALJ was still required to evaluate her opinion on the issues of the severity and functional effects of Plaintiff's impairments. (Doc. 18 p. 14). Second, Plaintiff argues that it was erroneous for the ALJ to reject Nurse Practitioner Botz's opinion on the grounds that the opinion was out of proportion to the mental status examination findings which show no significant problems with memory or concentration. (Doc. 18 p. 15). Plaintiff contends that his inability to function on a job is due to mood swings and, thus, his ability to remember and concentrate would not save him from missing an unacceptable amount of work due to his mood swings. (Doc. 18 p. 15). Thus, Plaintiff argues, the ALJ's reasons for rejecting Nurse Practitioner Botz's opinions were invalid. (Doc. 18 p. 15).

Defendant argues that because Nurse Practitioner Botz was not an acceptable medical source her opinion is not a medical opinion and is not entitled to any special significant or consideration. (Doc. 19 p. 8). In addition, Defendant argues that substantial evidence supports the ALJ's decision to accord "limited weight" to Nurse Practitioner Botz's opinion. (Doc. 19 p. 18).

"While nurse practitioners are not 'acceptable medical sources' for establishing an impairment, 20 C.F.R. §§ 404.1513(a), 416.913(a), they are nonetheless considered an 'other' medical source whose testimony may be used 'to show the severity of … impairment(s) and how it affects [the] ability to work.' 20 C.F.R. § 404.1513(d)(1)." *Colon v. Colvin*, 2013 WL 4890312, at *2 (M.D. Fla. Sept. 11, 2013). Opinions from "other sources" are not entitled to any particular deference. *Adams ex rel. A.M.P. v. Astrue*, 2012 WL 2923918, at *5 (N.D. Ala. July 16, 2012). An ALJ should generally explain the weight given to opinions from "other sources," or "otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6.

The Court finds no error in the ALJ's decision to accord Nurse Practitioner Botz's opinion limited weight. As a nurse practitioner, Nurse Practitioner Botz's opinion was not entitled to any special significance or weight. Nevertheless, the ALJ considered her opinion as an "other" medical source and stated the weight he accorded the opinion. While Plaintiff is correct that his lack of memory and concentration problems do not necessarily undermine limitations caused by mood swings and depression, Nurse Practitioner Botz's finding that Plaintiff is "unable to work" does seem out of proportion to the mental status examinations as discussed by the ALJ. (Tr. 27, 435, 453, 485, 552). In any event, it seems that Nurse Practitioner Botz's opinion that Plaintiff was

"unable to work" was an opinion on an ultimate issue reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d); *See Denomme*, 518 F. App'x at 878; *Hutchinson*, 408 F. App' x at 327. Finally, the ALJ was not incorrect to note that Nurse Practitioner Botz's opinion was not an acceptable medical source.

### 3. The ALJ's treatment of the state agency evaluators' opinions.

Plaintiff argues that it was an error of law for the ALJ to give more weight to non-examining sources over Plaintiff's treating sources' opinions. (Doc. 18 p. 16). Defendant responds that substantial evidence supports the ALJ's decision to accord great weight to the opinions of the state agency psychological consultants. (Doc. 19 p. 10).

"State agency medical and psychological consultants are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled." 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(i). Where an ALJ properly rejects the opinions of a claimant's treating sources, the ALJ may rely on the opinion of a non-examining, state agency medical or psychological consultant where the record otherwise supports the opinion. *See Jarrett v. Comm'r of Soc. Sec.,* 422 F. App'x 869, 874 (11th Cir. Apr. 11, 2011) (finding ALJ did not err in giving significant weight to state agency medical consultant where the ALJ appropriately discounted treating physician's opinion).

Here, the Court finds that the ALJ did not err in his consideration of the state agency sources' opinions. The ALJ explained his reasoning in according significant weight to the opinions of the state agency evaluators while discounting the opinions of Plaintiff's treating sources. Substantial evidence supports the ALJ's decision.

**b) Whether the ALJ erred in his evaluation of Plaintiff's credibility.**

Plaintiff argues that the ALJ erred by finding that Plaintiff's complaints of back pain were not entirely credible on the basis of Plaintiff's "modest" physical examination findings. (Doc. 18 p. 17). Plaintiff argues that the objective evidence was not modest, but supported Plaintiff's complaints of severe pain rather than undermine his credibility. Further, Plaintiff argues that the ALJ erred by finding that Plaintiff's complaints of debilitating right hand pain were undermined by the evidence of record showing Plaintiff could use his right hand in May of 2013. (Doc. 18 p. 18). Plaintiff notes, however, that his right hand pain did not begin until 1-2 months prior to April of 2014. (Doc. 18 p. 18).

Defendant argues that the ALJ properly considered Plaintiff's subjective complaints and adequately explained his reasoning for finding Plaintiff not entirely credible. (Doc. 19 p. 13-16).

The Eleventh Circuit has established a three-part "pain standard" that courts must follow to determine if a claimant's subjective complaints of pain support a finding that the claimant is disabled. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Id.*

"If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id.* In determining credibility, the ALJ must consider the entire case records, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists

and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. *Glover v. Comm'r of Social Sec.*, 2012 WL 84775, at *8 (M.D. Fla. 2012) (citing SSR 96-7p.). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

Here, the Court finds that the ALJ did not commit reversible error in evaluating Plaintiff's credibility. The ALJ sufficiently explained his reasoning and substantial evidence supported his conclusion that Plaintiff's complaints were not entirely credible. Despite Plaintiff's claim that the ALJ was incorrect to find that Plaintiff's back pain was "modest," the ALJ's decision shows that he considered the objective medical evidence, including x-rays and MRIs, but based his decision on the fact that Plaintiff's physical examination findings showed normal motor strength, no deficits in reflexes or sensation, and no significant deficits in range of motion. (Tr. 25-27). Furthermore, while Plaintiff alleges that his right hand problems began after the May 2013 record the ALJ cited, the ALJ's discussion of the record supports his determination that Plaintiff did not have continuous right hand pain. *See Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (holding that a claimant's impairment and inability to work must last for a continuous period of at least twelve months).

In addition to his discussion of Plaintiff's back pain and hand pain, the ALJ based his credibility finding on Plaintiff's daily activities of living. (Tr. 25-6). The ALJ noted that Plaintiff performs a modest range of activities such as going to the store regularly, doing some household chores, attending AA meetings regularly, and preparing simple things to eat. (Tr. 25). The ALJ noted that as recently as March 2013, Plaintiff reported doing yard work for a couple of days, and that he was riding his bike in September and December 2013. (Tr. 26). Plaintiff's reported daily activities are inconsistent with his allegations of disabling limitations. *See Conner v. Astrue*, 415 F. App'x 992, 995 (11th Cir. 2011) ("A claimant's daily activities may be considered in evaluating

and discrediting a claimant's subjective complaints.") (citing *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984)). Substantial evidence supports the ALJ's credibility finding, which the Court will not disturb on review.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 20, 2017.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties